# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

D'SEAN HATTEN,

Defendant-Appellant.

UNPUBLISHED
March 5, 2015

No. 319417
Wayne Circuit Court
LC No. 13-005046-FC

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of five counts of assault with intent to commit murder, MCL 750.83, five counts of felonious assault, MCL 750.82, one count of domestic violence, MCL 750.81, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 280 to 560 months' imprisonment for each assault with intent to commit murder conviction, 12 to 48 months' imprisonment for each felonious assault conviction, 93 days' imprisonment for the domestic violence conviction, and two years' imprisonment for the felony-firearm conviction. The trial court also ordered defendant to pay $600 in court costs and $400 in attorney fees. We affirm defendant's convictions and sentences, but remand for the trial court for further proceedings to establish a factual basis for the $600 in costs imposed, or to alter that figure, if appropriate.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from two drive-by shootings that occurred in Detroit, Michigan, on or around May 23, 2013. Storm Brooks and defendant knew one another for approximately five years and together have a son, TH. Storm moved in with her mother, Rhonda Brooks, and Rhonda's husband, Lee Walker, at 19791 Rutherford in March 2013 because she and defendant had an argument, defendant was arrested, and defendant kicked in her door after he was released from jail. Rhonda testified that defendant had previously broken her windows and driven his vehicle rapidly up and down her street. Walker testified that every time defendant and Storm had a problem, defendant would destroy Walker's property and shoot Walker's cars.

-1-

According to Storm, she and defendant had an argument on the phone on May 23, 2013,[1] and defendant was served with a personal protection order (PPO) against him that day. According to Storm, defendant came to the house at approximately 7:00 p.m. after he was served with the PPO. He was yelling, but Storm could not understand him.

Rhonda testified that defendant repeatedly called her on May 23, 2013. At approximately 6:00 p.m., defendant called and said, "Everybody better get out. I'm down on the corner watching." Rhonda testified that defendant sounded angry. Later that night, after defendant had come by the house and yelled, defendant's mother called and asked if she could pick up TH, but Storm did not think that would be a good idea. Rhonda heard defendant in the background threatening to come over and kick in the door. Rhonda called the police.

Walker testified that defendant made threatening calls to Rhonda throughout the day on May 23, 2013, and at approximately 5:00 p.m. or 6:00 p.m., defendant drove by the house in his burgundy Trailblazer, and was yelling what he was going to do and that they should move out of the house.

Walker testified that at approximately midnight that night, defendant called, said, "wakey, wakey," and told them that they should get out of the house. According to Walker, defendant said that he was on his way. At approximately 2:00 a.m. or 2:20 a.m., shots were fired at the house while Storm, TH, Rhonda, Walker, and Dushion Dennis, Rhonda's nephew, were present inside the house. Walker heard three shots. Storm grabbed TH and pulled him to the floor. Shots were fired into the room that she was in and hit near the floor. Storm ran upstairs with TH, called defendant's mother, and asked her if she had seen defendant. Defendant's mother said that she had not seen him. Rhonda called 911.

After the first shots were fired, the lights were turned on in the house and the occupants were waiting for the police. Walker and Dennis were at the front door. Approximately 20 minutes after the first shooting, a second set of shots was fired. Walker saw defendant shooting out the window on the driver's side of a gray car, wearing a white T-shirt. Subsequently, after the police left, Walker picked up spent cartridges from inside the house and gave them to the prosecutor.

Dennis did not know defendant, but had seen him before. At approximately 2:00 a.m. on May 23, 2013, Dennis heard shots enter the house and saw a gray Avenger drive by the house. Dennis told everyone to get down. He did not see who was in the car the first time it passed. Dennis felt fragments from the window fall on his head. While they were waiting for the police, Dennis again saw a gray Avenger coming down the street and the shots started again. Dennis saw defendant on the driver's side of the vehicle, hanging out the window, wearing a white T-shirt, holding a weapon and firing shots. Dennis was unable to count the shots, as they were fired rapidly.

---

[1] At one point, Storm testified that they argued on the morning of May 22, 2013.

While talking to the police after the shootings, Storm saw defendant in a gray Avenger driving down the street and pointed it out. Defendant drives a burgundy Trailblazer, but his ex-girlfriend drove an Avenger.

Officer Raymond Buford of the Detroit Police Department responded to a drive-by shooting at 19791 Rutherford on May 23, 2013. As he was talking to the victims, a gray Avenger drove by and the victims indicated that it was the vehicle that had just done the shooting. He and his partner, Officer Philip Parham, searched the area for the vehicle. They located and stopped the vehicle. A young woman[2] was driving, defendant was in the front passenger's seat, and a man named Leon Pierce was also in the vehicle. The occupants were patted down, but no gun was found. The officers arrested defendant. Buford collected four shell casings near a bus stop on Seven Mile Road. Buford testified that one of the occupants of the house said that the passenger was the person shooting. Buford had been to the Rutherford address approximately eight months to a year earlier, after defendant had "shot the car up" that belonged to Storm or Walker.

Defendant was charged with five counts of assault with intent to commit murder, five counts of felonious assault, aggravated stalking, and domestic violence second offense. At the preliminary examination, the prosecution dismissed the charge of aggravated stalking. Before trial, the prosecution filed a notice of its intent to offer evidence of defendant's other acts of domestic violence under MCL 768.27b and MRE 404(b), including evidence that: (1) defendant had assaulted Storm on May 3, 2013, and kicked in her door after being released from jail, (2) defendant had shot Rhonda's car in November 2012, and (3) defendant had broken windows at Rhonda's home and in her van in April 2010.

At the start of trial, the trial court granted the prosecution's request to amend the information to add a count of felony-firearm. During trial, Storm testified that, in March 2013, she and defendant had an argument and defendant kicked in her door after he was released from jail. Rhonda testified that defendant had previously broken her windows and sped up and down the street. Walker testified that every time defendant and Storm had a problem defendant would destroy Walker's property and shoot his cars. Buford also testified that he had been to the address where the incident occurred approximately eight months to a year earlier, after defendant had shot up Storm's or Walker's vehicle. After the close of testimony, defendant objected to a jury instruction regarding other acts of domestic violence. The trial court allowed the instruction based on the "overriding manner" of the domestic violence statute. Defendant was convicted of all offenses charged in the second amended felony information.

At sentencing, trial counsel objected to the scoring of 50 points for offense variable (OV) 7 because there was no torture or terrorism. The trial court assessed 50 points for OV 7 based on its findings that defendant had called the house, said he was coming to shoot the house, and did so twice, which qualified as an act of terror. The trial court sentenced defendant within the minimum guidelines range to 280 to 560 months' imprisonment for each assault with intent to

---

[2] Nkari Mandisa, the driver, was originally charged along with defendant, but the charges against Mandisa were dismissed at the preliminary examination.

commit murder conviction, 12 to 48 months' imprisonment for each felonious assault conviction, 93 days' imprisonment for the domestic violence conviction, and two years' imprisonment for the felony-firearm conviction, with 182 days' jail credit. The trial court also ordered defendant to pay $600 in court costs and $400 in attorney fees, in addition to other costs and fees. This appeal followed.

## II. PRIOR ACTS OF DOMESTIC VIOLENCE

First, defendant contends that the trial court abused its discretion in admitting evidence of his other acts of violence to show his propensity to be violent. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Douglas*, 496 Mich 557, 574; 852 NW2d 587 (2014) (citation and quotation marks omitted). The record does not contain a response from defendant to the prosecution's notice of intent, nor did defendant object to the admission of testimony regarding his prior acts of violence, but only objected to a proposed jury instruction regarding other acts of domestic violence. Therefore, with regard to the admission of evidence of prior acts of domestic violence, this issue is unpreserved. See *Douglas*, 496 Mich at 574. "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). We review a trial court's decision to give a jury instruction to see if the instruction fairly presented the issues for trial and sufficiently protected the defendant's rights. *People v Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997).

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MCL 768.27b(1) provides:

Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

This Court has stated:

Under MRE 404(b), the prosecution may not present evidence of a defendant's other crimes, wrongs, or acts in order to show a defendant's propensity to commit a crime. Notwithstanding this prohibition, however, in cases of domestic violence, MCL 768.27b permits evidence of prior domestic violence in order to

-4-

show a defendant's character or propensity to commit the same act. [*People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010) (citations omitted).]

Defendant only claims that the evidence of his prior acts was offered for an improper propensity purpose. However, because evidence of prior acts of domestic violence may be offered to show a defendant's propensity to commit the same act under MCL 768.27b, defendant's claim that the evidence was offered for an improper propensity purpose is without merit. *Railer*, 288 Mich App at 219-220.

Defendant does not dispute the other requirements of MCL 768.27b. Moreover, we find no plain error affecting defendant's substantial rights. First, this case involved domestic violence, as defendant attempted to cause physical harm to Storm, or engaged in activity directed toward Storm, an individual with whom he has a child, that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested. See MCL 768.27b(1), (5)(a)(*i*), (5)(a)(*iv*), and (5)(b)(*iii*). The activity also occurred not more than 10 years before the charged offense. See MCL 768.27b(4). Further, defendant failed to establish that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. See MCL 768.27b(1); MRE 403.

In light of the admissibility of this testimony, the trial court did not err in instructing the jury that it may consider the evidence of defendant's prior acts of domestic violence as evidence against him. Further, the trial court properly instructed the jury that it "must not convict the Defendant solely because you think he is guilty of other bad acts." "[J]urors are presumed to follow their instructions." *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014).

Finally, even if the admission of the prior shooting of a vehicle or breaking windows was plain error, the error did not affect defendant's substantial rights given the eyewitness testimony against him. See *People v Bynum*, 496 Mich 610, 637; 852 NW2d 570 (2014).

## III. SUFFICIENCY OF THE EVIDENCE

Next, defendant contends that there was insufficient evidence of the intent element of the assault with intent to commit murder convictions. We disagree.

This Court has stated:

We review de novo a defendant's challenge to the sufficiency of the evidence. In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. However, we do not interfere with the factfinder's role of determining the weight of the evidence and the credibility of witnesses. It is for the trier of fact, rather than this Court, to determine what inferences can be fairly drawn from the evidence and to determine the weight to be afforded to the inferences. The prosecution need not negate every reasonable theory of innocence, but must only prove its own theory beyond a reasonable doubt "in the face of whatever contradictory evidence the defendant may provide." Circumstantial evidence and the reasonable inferences that arise from

that evidence can constitute satisfactory proof of the elements of the crime. We resolve all conflicts in the evidence in favor of the prosecution. [*People v Kosik*, 303 Mich App 146, 150-151; 841 NW2d 906 (2013) (citations omitted).]

Further, "[t]his Court has consistently observed that '[b]ecause of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient.' " *Ericksen*, 288 Mich App at 196-197 (citation omitted).

"The elements of assault with intent to commit murder are '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.' " *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (citation omitted). "[T]his crime requires a specific intent to kill. Behavior that might otherwise establish malice in the context of murder, such as callous disregard for human life, is insufficient." *People v Marshall*, 493 Mich 1020, 1020; 829 NW2d 876 (2013) (citations omitted). "The intent to kill may be proven by inference from any facts in evidence. A person may have that state of mind without directing it at any particular victim." *People v Abraham*, 234 Mich App 640, 658; 599 NW2d 736 (1999) (citations and quotation marks omitted). The intent to kill may be inferred from the use of a dangerous weapon. See *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993).

The parties do not dispute that the assault with intent to commit murder convictions relate to the second shooting, which is consistent with the prosecutor's statements during closing argument. The evidence established that defendant drove by the home, for a second time, and fired multiple shots at the house occupied by five individuals. This occurred after defendant and Storm had argued, defendant had made threatening calls, defendant had visited the home, and defendant had told everyone they should get out of the house. The evidence also established that the lights in the home were turned on at the time of the second shooting and two individuals, Walker and Dennis, were standing at the front door. Those individuals both saw defendant shooting. From these facts, a rational trier of fact could infer that defendant knew the home was occupied when he fired shots at the home for the second time that night and that defendant intended to kill the occupants when he fired the second set of shots at the home. See *Abraham*, 234 Mich App at 658; *DeLisle*, 202 Mich App at 672. Thus, taken in the light most favorable to the prosecution, there was sufficient evidence of the intent element to support defendant's assault with intent to commit murder convictions. *Kosik*, 303 Mich App at 150-151.

IV. SENTENCING

In his Standard 4 brief,[3] defendant raises several additional issues. Defendant contends that the trial court erred in scoring OVs 4, 7, 12, and 13, Defendant also argues that the trial court failed to articulate reasons for imposing the longest possible minimum sentence, and that this Court should remand for correction of the presentence investigation report (PSIR). We conclude that any errors in scoring the OVs did not affect the minimum guidelines range and disagree with defendant's other claims.

---

[3] A pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

"A challenge to a sentence that is within the guidelines sentence range is preserved when it is raised at sentencing, in a motion for resentencing, or in a motion to remand filed in the Court of Appeals." *People v Loper*, 299 Mich App 451, 456; 830 NW2d 836 (2013). Defendant only objected to the scoring of OV 7 at sentencing, and has not filed a motion for resentencing or a motion to remand. Accordingly, only the issue regarding the scoring of OV 7 is preserved. The issues regarding the scoring of OV 4, OV 12, and OV 13, as well as defendant's arguments regarding the trial court's decision to impose the longest possible minimum sentence and errors in the PSIR, are unpreserved. See *id*.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

"[T]his Court may review an unpreserved scoring issue for plain error affecting substantial rights." *Loper*, 299 Mich App at 457. The other "[u]npreserved sentencing errors are [also] reviewed for plain error affecting substantial rights." *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005).

## A. OV 4

First, defendant argues that there was no evidence of serious psychological injury to support the assignment of 10 points for OV 4. Under OV 4, 10 points are assigned if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Here, the PSIR indicates that Walker told the probation agent that he had spoken with Rhonda, Storm, and her son, and that both Rhonda and Storm were "not emotionally impacted by the incident." However, the very next sentence states that Storm indicated that "she did not know how this would effect [sic] her in the future and may need to seek counseling." Additionally, Rhonda testified during trial that she was afraid she would be shot during the incident and that she was "in a panic." A victim's testimony that she was fearful during the commission of the sentencing offense can support a score of 10 points under OV 4. See *People v Agpar*, 264 Mich App 321, 329; 690 NW2d 312 (2004). Walker's statement may indicate that in fact Rhonda did not suffer serious psychological injury to support the score under OV 4. Nonetheless, and although the record evidence in support of this score is somewhat thin, enough evidence exists in support of this score to enable this Court to conclude that any error in the scoring was not "plain," i.e., "clear or obvious." *Carines*, 460 Mich at 763.

Further, even if the error was plain, "[w]here a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Defendant's total OV score was 175 points (level VI). The scoring of 10 points for OV 4 did not affect the OV level because level VI applies to OV scores of 100 or more points. MCL 777.62 (providing the minimum sentence ranges for Class A felonies). Even without these 10 points, and even assuming other scoring errors, as discussed below, defendant's score would still have been within OV level VI. Because any error did not alter the guidelines range, resentencing is not required. See *Francisco*, 474 Mich at 89 n 8.

## B. OV 7

Next, defendant asserts that the trial court erred in assigning 50 points for OV 7 because OV 7 requires some physical abuse, and none of the victims were injured. Under OV 7, 50 points are assigned if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "A trial court can properly assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a)." *Hardy*, 494 Mich at 439-440.

At sentencing, trial counsel and the trial court both incorrectly referred to terrorism, which is not conduct listed in OV 7. See MCL 777.37(1)(a). Nonetheless, the trial court found that defendant called the house, told the occupants he was coming to shoot up the house, and went to the house twice. These findings were not clearly erroneous and were supported by a preponderance of the evidence. See *Hardy*, 494 Mich at 438. These facts are also adequate to satisfy the scoring of 50 points for OV 7. See *id.* "[I]t is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount." *Id.* at 441. By calling the house at a late hour and telling the individuals he was coming over before he went and shot at the house, defendant "engaged in conduct beyond the minimum necessary to commit the crime, and . . . it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount." *Id.* at 443. Further, defendant's claim that some physical abuse or injury is required is inaccurate. Accordingly, the trial court properly assigned 50 points for OV 7.

## C. OV 12

Defendant next argues that the trial court erred in assigning 25 points for OV 12 because there were only two shootings, both resulted in a conviction, the shootings constituted crimes against property, the non-felony telephone calls were not charged, and there was no proof of charges brought for defendant's prior acts of violence that were used against him. Under OV 12, 25 points are assigned if "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(a). In order to constitute a contemporaneous felonious criminal act, the act must have occurred within 24 hours of the sentencing offense and the act must not have resulted, and will not result, in a separate conviction. MCL 777.42(2)(a)(*i*)-(*ii*). Felony-firearm is not counted in scoring OV 12. MCL 777.42(2)(b).

In a supplemental brief, the prosecution has conceded error in the scoring of OV 12. Arguably, defendant's multiple threatening calls to Storm's family could have constituted aggravated stalking, a felony, because defendant stalked Storm, his actions may have been in violation of a restraining order, and his threats may have constituted credible threats against Storm and her family. MCL 750.411i(1)(e), (2)(a), (2)(c), (3). Aggravated stalking is a crime against a person. MCL 777.16t. These acts also occurred within 24 hours of the sentencing offense and they did not result, and there is no indication they will result, in separate convictions.

-8-

MCL 777.42(2)(a)(*i*)-(*ii*).[4]   Contrary to defendant's assertion, those acts do not have to be charged in order to be counted.  It is therefore possible that the trial court did not err in scoring this variable.

Nonetheless, even if OV 12 was erroneously scored, we agree with the prosecution that resentencing is not required.  The assignment of 25 points for OV 12, even in addition to the 10 points for OV 4 (if scored in error), did not alter the appropriate guidelines range.  See MCL 777.62.  Without these 35 points, defendant's OV score of 140 points would still have been within OV level VI.  Thus, resentencing is not required.  *Francisco*, 474 Mich at 89 n 8.

### D.  OV 13

Defendant also contends that the trial court erred in scoring 25 points under OV 13 because conduct scored under OV 12 may not be scored under OV 13.  Under OV 13, 25 points are assigned if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person."  MCL 777.43(1)(c).  "[A]ll crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction."  MCL 777.43(2)(a).  "[C]onduct scored in offense variable 11 or 12" is not to be scored.  MCL 777.43(2)(c).

Defendant was convicted of five counts of assault with intent to commit murder, relating to the five victims of the second shooting, and five counts of felonious assault, relating to the five victims of the first shooting.  These 10 crimes, although occurring during only two criminal incidents, support the scoring of 25 points for OV 13.  See *People v Harmon*, 248 Mich App 522, 524, 532; 640 NW2d 314 (2001) (holding that 25 points were appropriately scored based on four concurrent convictions resulting from the same criminal incident).  As discussed, these crimes could not have been appropriately scored under OV 12, but there were other criminal acts that arguably did support the scoring of OV 12.  Regardless, any error in scoring OV 12 does not require resentencing.  Given that these crimes could not be scored under OV 12, they could be properly scored under OV 13.  Nonetheless, even if the trial court improperly scored OV 13, the assignment of 25 points for OV 13, even in addition to the 35 points for OV 4 and OV 12, did not alter the appropriate guidelines level because defendant would still have had 115 OV points and still would have fallen within OV level VI.  See MCL 777.62.  Thus, resentencing is not required.  *Francisco*, 474 Mich at 89 n 8.

### E.  FAILURE TO ARTICULATE REASONING FOR SENTENCE

Next, defendant argues that the trial court erred in failing to articulate reasons for imposing "the longest possible minimum sentence," in violation of *People v Harrington*, 490 Mich 876; 803 NW2d 691 (2011).  In *Harrington*, the Michigan Supreme Court stated that the trial court "articulated a substantial and compelling reason for departing from the guidelines when imposing a sentence following a probation violation, but it failed to articulate any rationale

---

[4] A charge of aggravated stalking against defendant was dismissed at the preliminary examination.

to justify imposition of the longest possible minimum sentence." *Harrington*, 490 Mich 876, citing *People v Smith*, 482 Mich 292; 754 NW2d 284 (2008). The Court ordered the trial court, on remand, to "issue an order that articulates why this level of departure is warranted, or resentence the defendant." *Harrington*, 490 Mich 876. In *Smith*, 482 Mich at 310, the Court held that, with regard to a trial court's articulation of reasons for a sentencing departure, "[t]he trial court's articulation must be sufficiently detailed to facilitate appellate review. This includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. at 311.

The trial court in this case sentenced defendant to 280 to 560 months' imprisonment for each assault with intent to commit murder conviction. The minimum sentence of 280 months was within defendant's minimum sentence range of 171 to 285 months. MCL 777.62. Therefore, contrary to defendant's assertion, the trial court did not impose the "longest possible minimum sentence," since it could have imposed a minimum sentence of 285 months. Moreover, defendant's reliance on *Harrington* is misplaced. It is clear that in *Harrington*, as well as in *Smith*, the trial court sentenced the defendant above the minimum sentence guidelines range. In such case, the trial court is required to not only provide reasons for the departure, but also explain the amount of the departure. *Smith*, 482 Mich at 311. The *Harrington* Court's reference to "the longest possible minimum sentence," did not refer to the longest possible sentence to which the defendant could be sentenced *within* the guidelines range, but rather to the fact that the trial court sentenced the defendant to the longest sentence that did not violate the rule that the minimum sentence not exceed two-thirds of the statutory maximum sentence. See *Harrington*, 490 Mich 876; *People v Harper*, 479 Mich 599, 617; 739 NW2d 523 (2007), cert den 552 US 1232 (2008); MCL 769.34(2)(b). In this case, however, there was no departure; for a sentence within the guidelines range, a trial court's articulation is sufficient if it expressly relies on the sentencing guidelines. *People v Conley*, 270 Mich App 301, 313; 715 NW2d 377 (2006). Thus, defendant's argument is without merit.

## F. ERRORS IN PSIR

Finally with regard to sentencing, defendant argues that this Court should remand for corrections of errors in the PSIR, but fails to identify those errors. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). Thus, defendant has failed to establish a plain error affecting his substantial rights. Moreover, at sentencing, trial counsel stated: "I reviewed [the PSIR] with my client and it's factually accurate. There are no additions, deletions or corrections." This affirmative approval extinguished any error. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). See also *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002) ("A defendant may not claim error regarding an issue on appeal where his lawyer deemed the action proper at trial or otherwise acquiesced.").

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Next, defendant contends in his Standard 4 brief that trial counsel was ineffective in failing to object to the scoring of the OVs, failing to request that the jury hear a tape recording of

a neighbor calling the police, and failing to "fully address" the issue regarding defendant's prior acts. We disagree.

Defendant did not move the trial court for a new trial or *Ginther*[5] hearing; nor did he make a separate motion before this Court to remand for a *Ginther* hearing. Our review is therefore limited to mistakes apparent on the record. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

> Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record. [*People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (citations and quotation marks omitted).]

In order to establish a claim of ineffective assistance of counsel, the defendant must prove: (1) "that his trial counsel failed to meet an objective standard of reasonableness based on prevailing professional norms," and (2) that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lopez*, 305 Mich App at 694 (citations and quotation marks omitted). "The crux of this test is to determine whether any mistakes effectively deprived defendant of the right to a fair trial." *Id*. "There is a presumption of effective assistance of counsel, and the burden is on defendant to prove otherwise. An appellate court should neither 'substitute [its] judgment for that of counsel on matters of trial strategy, nor . . . use the benefit of hindsight when assessing counsel's competence.' " *Roscoe*, 303 Mich App at 644 (citations omitted; alteration in original).

First, defendant argues that trial counsel should have objected to the scoring of the OVs. As discussed above, the trial court may have erred in scoring OV 4 and OV 12. However, even if trial counsel's failure to object was not objectively reasonable, there is no reasonable probability that the error prejudiced defendant because such error did not alter defendant's minimum guidelines range. See *Lopez*, 305 Mich App at 694. With regard to OV 7 and OV 13, there was no error.[6] "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *Henry*, 305 Mich App at 141. Thus, defendant was not denied the effective assistance of counsel.

Second, defendant claims that trial counsel should have requested that the jury hear a tape recording of a neighbor calling the police to report that shots were being fired from a burgundy

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] As discussed, even if there was an error in scoring OV 4 and OV 12, and also in scoring OV 13, the errors did not alter the minimum guidelines range.

truck, which would have supported his theory of mistaken identity. However, there is no evidence in the record that such a tape recording exists. At trial, Rhonda testified that she did not ask any of her neighbors to call 911. Walker testified that he did not recall asking one of his neighbors to call the police or if any of his neighbors called the police. This testimony does not support the existence of a recording of a neighbor calling 911. Defendant has thus failed to establish the factual predicate for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Finally, defendant asserts that trial counsel was ineffective in failing to "fully address" the prior acts evidence and seek an interlocutory appeal of the trial court's ruling. As discussed above, there was no error in the admission of the evidence regarding the March 2013 act and defendant fails to establish any error in the admission of evidence regarding the other two acts. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *Henry*, 305 Mich App at 141. Even if the admission of the evidence was improper, and trial counsel should have objected, there is no reasonable probability that the result of the proceedings would have been different without such evidence. See *Lopez*, 305 Mich App at 694. Walker and Dennis both saw defendant shooting at the house. The trial court also instructed the jury that it "must not convict the Defendant solely because you think he is guilty of other bad acts." "[J]urors are presumed to follow their instructions." *Roscoe*, 303 Mich App at 646. Accordingly, trial counsel was not ineffective. We therefore decline to grant defendant's request for a new trial, or in the alternative an evidentiary hearing, on the grounds of ineffective assistance of counsel.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Defendant next contends that his appellate counsel was ineffective in failing to raise the issues regarding sentencing, ineffective assistance of trial counsel, and double jeopardy. We disagree.

Defendant preserved this issue by raising it in his Standard 4 brief. *Lopez*, 305 Mich App at 693. "The Court uses the same legal standard for ineffective assistance of counsel when scrutinizing the performance of trial counsel and appellate counsel." *Lopez*, 305 Mich App at 693. This Court has stated: "[T]o the extent that defendant argues that appellate counsel should have raised the issue of trial counsel being ineffective, because defendant raises this issue in his Standard 4 brief, any possible error committed by his appellate counsel was cured." *Id*.

First, defendant argues that his appellate counsel should have raised the sentencing issues. However, because defendant raises the sentencing issues in his Standard 4 Brief, any error was cured. See *Lopez*, 305 Mich App at 694. Moreover, as discussed above, defendant is not entitled to resentencing, so the failure to raise any sentencing issues on appeal did not prejudice him. See *id*.

Defendant next argues that his appellate counsel should have raised the issue regarding the ineffective assistance of trial counsel and should have sought a *Ginther* hearing. Again, because defendant raises the issue of ineffective assistance of trial counsel in his Standard 4 brief, and requested relief in the form of a new trial or in the alternative remand for an evidentiary hearing, any error was cured. See *Lopez*, 305 Mich App at 694. Moreover, with

regard to trial counsel's failure to raise the sentencing issues or object to the admission of evidence of prior acts, appellate counsel's failure to raise these issues did not prejudice defendant. See *id*.[7] With regard to trial counsel's failure to request that a tape recording be played for the jury, there is no record evidence of such recording. Thus, appellate counsel's failure to raise the issue did not prejudice defendant.

Finally, defendant argues that his appellate counsel should have raised the double jeopardy issue raised in his Standard 4 brief and discussed in Part VII, *infra*. However, because defendant raises this issue on appeal, any error was cured. See *Lopez*, 305 Mich App at 694. Also, as discussed below, there was no double jeopardy violation. Accordingly, appellate counsel was not ineffective for failing to raise a meritless argument. *Henry*, 305 Mich App at 141.

## VII. DOUBLE JEOPARDY

Defendant contends in his Standard 4 brief that he was improperly subjected to double jeopardy by his convictions of both assault with intent to commit murder and felonious assault, as well as based on his multiple convictions of each offense. We disagree.

Defendant failed to preserve this issue by raising it at trial. See *People v Wilson*, 242 Mich App 350, 359-360; 619 NW2d 413 (2000). This Court reviews "for plain error unpreserved claims that a defendant's double jeopardy rights have been violated." *Matuszak*, 263 Mich App at 47.

"The United States and Michigan Constitutions protect a person from being twice placed in jeopardy for the same offense." *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004), citing US Const, Am V and Const 1963, art 1, § 15. Among other protections, the prohibition against double jeopardy "protects against multiple punishments for the same offense." *Nutt*, 469 Mich at 574.

> [T]he "same elements" test enunciated in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 2d [sic] 306 (1932), is "the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15." "The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense." "If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved." [*People v Kammeraad*, ___ Mich App ___, ___; ___ NW2d ___ (2014); slip op at 28 (citations omitted).]

---

[7] To the extent that appellate counsel could have set forth a stronger argument regarding defendant's prior acts, the admission of such evidence did not prejudice defendant, as discussed above. Therefore, the failure to raise the issue on appeal did not prejudice defendant.

However, this Court has held that "[t]here is no violation of double jeopardy protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other." *People v Colon*, 250 Mich App 59, 63; 644 NW2d 790 (2002) (citation and quotation marks omitted; alteration in original).

In this case, defendant was convicted of assault with intent to commit murder and felonious assault based on separate shooting incidents. The assault with intent to commit murder convictions were based on the second shooting, while the felonious assault convictions were based on the first shooting. Because the first crime was complete before the second took place, there was no double jeopardy violation based on defendant's convictions of both assault with intent to commit murder and felonious assault. See *Colon*, 250 Mich App at 63.

Defendant was also convicted of five counts each of assault with intent to commit murder and felonious assault. The separate counts related to each of the five victims who were present in the house during the shootings. This Court has stated: "Where crimes against persons are involved we believe a separate interest of society has been invaded with each victim and that, therefore, where two persons are assaulted, there are two separate offenses." *People v Lovett*, 90 Mich App 169, 174; 283 NW2d 357 (1979). There were five assaults in each shooting because defendant's acts were an attempt with force or violence to do corporal harm to each occupant of the house. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). Because there were five victims of each shooting, there was no double jeopardy violation when defendant was convicted of an offense relating to each victim.

## VIII. FAILURE TO PRODUCE AN ENDORSED WITNESS

Next, defendant argues in his Standard 4 brief that the prosecutor's failure to produce Office Philip Parham at trial denied defendant due process, and that he was entitled to a jury instruction regarding the failure to produce the witness. We disagree.

Defendant failed to preserve this issue by filing a motion for a due diligence hearing or a new trial. See *People v Dixon*, 217 Mich App 400, 409; 552 NW2d 663 (1996). This Court reviews unpreserved issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

> A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial. A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence. If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. [*People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004) (citations omitted).]

Officer Parham was endorsed as a witness for trial. On October 31, 2013, the second day of trial, the trial court asked the prosecutor whether there was a problem producing Officer Parham and Officer Buford. The prosecutor indicated that she was unable to contact them, "it wasn't put in the book," and "they were on Halloween Task Force Detail." The trial court ordered that both witnesses appear on Monday, November 4, 2013, at 9:00 a.m., and stated:

-14-

"You can tell them for me failure to appear may result in a warrant for their arrest signed by me." On November 4, 2013, the prosecution called Buford to testify. The prosecution then indicated it had no other witnesses, and rested its case. Defendant did not object and rested his case without calling any witnesses. Defendant did not request the missing witness instruction and the trial court did not instruct the jury regarding the missing witness.

On appeal, defendant does not argue whether the prosecutor exercised due diligence, and the prosecution's reasons for not producing Parham are not apparent from the record. Therefore, it is not clear or obvious that the prosecution failed to exercise due diligence in attempting to produce Parham for trial. Defendant fails to establish any plain error because the prosecution only breaches its duty if it fails to exercise due diligence to produce the witness. *Eccles*, 260 Mich App at 388. Accordingly, it is not clear that the missing witness instruction was required.

Moreover, the failure to produce Parham or provide the missing witness instruction did not affect defendant's substantial rights. See *Carines*, 460 Mich at 763. Defendant argues that Parham's testimony was necessary for the identification of defendant. According to defendant, because Buford testified that he did not send Rhonda a photograph of defendant by text message, it must have been Parham that did so. Defendant claims that the procedure was improper and prejudiced him because only one photograph was sent. At trial, Walker testified that someone sent a photograph of defendant to Storm after the incident. Buford testified that he did not take a photograph of defendant and send it to Storm's cell phone.

Defendant's claim that Parham sent a photograph to Rhonda is purely speculative. Moreover, Parham's testimony was not necessary for the identification of defendant as the shooter because two victims, Walker and Dennis, saw defendant shooting at the house. Storm and Rhonda did not see the shooter and, thus, could not have identified the shooter by a photograph. In sum, defendant has not demonstrated that Parham's failure to testify prejudiced him. Further, an instruction that the jury should infer that Parham's testimony would have been unfavorable to the prosecution's case would not have affected the outcome of the trial given the eyewitness testimony identifying defendant as the shooter.

IX. ADMISSION OF SHELL CASINGS

Defendant next argues in his Standard 4 brief that his right to due process was violated by the admission of shell casings that Walker found inside the house, and that trial counsel was ineffective in failing to object to the improper evidence and prosecutorial misconduct. We disagree.

Defendant failed to object to the admission of the shell casings. Therefore, this issue is unpreserved. *Benton*, 294 Mich App at 202. Defendant's claim of ineffective assistance of counsel is also unpreserved since defendant did not move for a new trial or a *Ginther* hearing. *Lopez*, 305 Mich App at 693. To the extent that defendant alleges prosecutorial error, this issue is also unpreserved because defendant did not object. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *Benton*, 294 Mich App at 202. Defendant's unpreserved claim of ineffective assistance of counsel is reviewed for errors apparent on the

record. *Matuszak*, 263 Mich App at 48. "This Court also reviews unpreserved claims of prosecutorial misconduct for plain error." *Gibbs*, 299 Mich App at 482.[8]

"The trial court may only admit relevant evidence. Relevant evidence is evidence that has any tendency to make a fact of consequence more or less probable." *People v Lane*, ___ Mich App ___, ___; ___NW2d ___ (2014) (Docket No. 313818); slip op at 8 (citations omitted). With regard to the chain of custody, this Court has stated that "the majority of our panels have concluded that the admission of real evidence does not require a perfect chain of custody." *People v White*, 208 Mich App 126, 130; 527 NW2d 34 (1994). This Court held that "a perfect chain of custody is not required for the admission of cocaine and other relatively indistinguishable items of real evidence. Rather, such evidence may be admitted where the absence of a mistaken exchange, contamination, or tampering has been established to a reasonable degree of probability or certainty." *Id*. at 132-133. "Once a proper foundation has been established, any deficiencies in the chain of custody go to the weight afforded to the evidence, rather than its admissibility." *Id*. at 133. This rule applies to evidence other than drugs, such as bullets. See *People v Mitchell*, 493 Mich 883; 822 NW2d 224 (2012). "MRE 901 . . . governs the foundation or authentication requirements for the admission of real evidence." *White*, 208 Mich App at 131 n 3. MRE 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

In order to establish a claim of ineffective assistance of counsel, the defendant must prove: (1) "that his trial counsel failed to meet an objective standard of reasonableness based on prevailing professional norms," and (2) that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lopez*, 305 Mich App at 694 (citations and quotation marks omitted). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id*. at 70.

At trial, the prosecutor asked Walker whether he went to look around outside after he called 911. Walker testified that after the first shooting, he saw "two spent shells . . . inside of the house." He testified that he picked them up after the police left and gave them to the prosecutor. Walker identified the items produced at trial as those "shells" found in the kitchen near where Tyiler eats, and the shell casings were admitted into evidence. Buford also testified that he collected shell casings from a bus stop near Seven Mile and they were admitted. Buford testified that shell casings are what comes after the bullet leaves the jacket and that they are

---

[8] Courts and litigants frequently have referred to claims such as that raised by defendant as "prosecutorial misconduct." This Court has recently stated that "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," and concluded that claims "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error.' "*People v Cooper*, ___Mich App ___; ___NW2d ___ (2015) (Docket No. 318159), slip op at 7 (citation omitted).

usually near where the gun is shot, unless they are moved. They could also be in the car if the shooter was shooting from a car.

Defendant argues that the shell casings found inside the house were irrelevant since defendant was never inside the house and the chain of custody was tainted. There was no admissibility issue based on the chain of custody because a proper foundation was laid. *White*, 208 Mich App at 133. Walker testified that the shell casings introduced were those that he found inside the house. See MRE 901(a). Any deficiencies in the chain of custody went to the weight of the evidence. *White*, 208 Mich App at 133.

Based on Buford's testimony that shell casings are usually found near where the gun is shot, unless they are moved, and the testimony that defendant shot at the house from a car, it does appear unlikely or improbable, at best, that shell casings found inside the house could have been from the shootings by defendant, assuming they were actually shell casings and not, as the prosecution posits in its supplemental brief, fired bullets or bullet fragments.[9] The shell casings from defendant's gun would most likely be in the car from which he was shooting or in the street, unless they were moved from outside. Shell casings from an unrelated shooting do not make a fact of consequence to this case more or less probable and would not be relevant. See *Lane*, ___ Mich App at ___; slip op at 8. Therefore it is possible that the admission of the items found inside the house, if indeed they were shell casings, was error. See *Benton*, 294 Mich App at 202.

Nonetheless, the admission of the shell casings did not affect defendant's substantial rights. See *Benton*, 294 Mich App at 202. There were eyewitnesses who saw defendant shooting at the house from a car. There was also testimony that at least one window was shot out, several windows had to be replaced, and there were bullet holes all over the house. The admission of two possibly irrelevant shell casings did not affect the outcome of the case given the other evidence. For these reasons, trial counsel's failure to object did not prejudice defendant. See *Lopez*, 305 Mich App at 694. To the extent that defendant suggests that the admission of this evidence was prosecutorial error, defendant fails to establish that the prosecutor acted in bad faith. See *Dobek*, 274 Mich App at 70. Regardless, the admission of such evidence did not affect defendant's substantial rights or deny him a fair trial. See *Gibbs*, 299 Mich App at 482; *Dobek*, 274 Mich App at 63.

## X. COURT COSTS AND ATTORNEY FEES

Finally, defendant argues in his Standard 4 that he is unable to pay the court costs and attorney fees imposed, trial counsel was ineffective in failing to object to such costs and fees, the trial court failed to explain its reasons for imposing court costs and attorney fees under *People v Sanders*, 296 Mich App 710; 825 NW2d 87 (2012), overruled by *People v Cunningham*, 496 Mich 145 (2014), there was no statutory authority for the order to reimburse attorney fees, and *Cunningham* prohibits imposing court costs. We agree that the imposition of $600 in court costs

---

[9] The prosecutor at trial stated in reference to the items found by Walker: "Maybe he calls them shell casings, but he clearly identified that it was what was shot."

requires an assessment of its factual basis, and we remand to the trial court, but conclude that there were no other errors.

Because defendant failed to object when the trial court ordered him to pay costs and attorney fees, this issue is unpreserved. See *People v Dunbar*, 264 Mich App 240, 251; 690 NW2d 476 (2004), overruled on other grounds *People v Jackson*, 483 Mich 271 (2009). Defendant's claim of ineffective assistance of counsel is also unpreserved since defendant did not move for a new trial or a *Ginther* hearing. *Lopez*, 305 Mich App at 693. This Court reviews the unpreserved issue concerning costs and attorney fees for plain error affecting defendant's substantial rights. *Dunbar*, 264 Mich App at 251. Defendant's unpreserved claim of ineffective assistance of counsel is reviewed for errors apparent on the record. *Matuszak*, 263 Mich App at 48.

### A. COSTS

Defendant challenges the imposition of costs under both this Court's decision in *Sanders* and our Supreme Court's decision in *Cunningham*. In *Sanders*, 296 Mich App at 715, this Court held that "a trial court may impose a generally reasonable amount of court costs under MCL 769.1k(1)(b)(*ii*) without the necessity of separately calculating the costs involved in the particular case." However, the Court found that remand was "necessary in order to facilitate meaningful appellate review of the reasonableness of the costs assessed defendant." *Id*. The Court remanded "to the trial court to conduct a hearing to establish the factual basis for the use of the $1,000 figure, or to alter that figure as the established factual basis may necessitate." *Id*. "[T]he purpose of this hearing is to factually establish the reasonable costs figure for felony cases in the Berrien Circuit Court, while affording defendant the opportunity to challenge that determination." *Id*. at 715-716.

In *Cunningham*, 496 Mich at 158, our Supreme Court overruled *Sanders* and held "that MCL 769.1k(1)(b)(*ii*) does not provide courts with the independent authority to impose 'any cost.' Instead, . . . MCL 769.1k(1)(b)(*ii*) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute."

However, on October 17, 2014, the Legislature amended MCL 769.1k to allow a trial court to impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case." MCL 769.1k(1)(b)(*iii*). See also 2014 PA 352. Such actual costs include:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities. [MCL 769.1k(1)(b)(*iii*).]

Section 1 of the amended act provides that the amendatory act applies to costs assessed before June 18, 2014, and after the effective date of the amendatory act (October 17, 2014). 2014 PA 352. Section 2 provides that the amendatory act "is a curative measure that addresses the

authority of courts to impose costs . . . before the issuance of the supreme court opinion in [*Cunningham*]." 2014 PA 352.

In this case, defendant was convicted of five counts of assault with intent to commit murder, MCL 750.83, five counts of felonious assault, MCL 750.82, domestic violence, MCL 750.81, and felony-firearm, MCL 750.227b. None of these statutes authorizes the imposition of court costs. Nor does any other statute appear to authorize the imposition of costs in this case. See *Cunningham*, 496 Mich at 150-151 (providing examples of statutes that authorize the imposition of court costs). Accordingly, under *Cunningham*, the imposition of costs was improper. *Id*. at 158.

Nonetheless, the amended version of MCL 769.1k makes clear that it applies to cases in which costs were assessed before June 18, 2014, such as this case. 2014 PA 352. "When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Mayor of Detroit v Arms Technology, Inc*, 258 Mich App 48, 65; 669 NW2d 845 (2003) (citation and quotation marks omitted). Because this case was still on appeal when the amended statute was enacted, the amended statute applies in this case. See *People v Konopka*, __ Mich App __; __ NW2d __ (2015) (Docket No. 319913), slip op at 6.

Under the amended version of MCL 769.1k, "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case" may be imposed. MCL 769.1k(1)(b)(*iii*).[10] The trial court imposed $600 in court costs without any explanation. Although the costs involved in this case need not be separately calculated, MCL 769.1k(1)(b)(*iii*), the trial court did not establish a factual basis, under the subsequently amended statute for the $600 in costs imposed. Indeed, it could not have done so at that time. However, without a factual basis for the costs imposed, we cannot determine whether the costs imposed were reasonably related to the actual costs, as required by MCL 769.1k(1)(b)(*iii*). In this case, defendant specifically challenges the lack of reasoning for the costs imposed and he should be given the opportunity to challenge the reasonableness below. See *Sanders*, 296 Mich App at 715. We therefore remand to the trial court for further proceedings to establish a factual basis for the $600 in costs imposed, or to alter that figure, if appropriate.

## B. ATTORNEY FEES

With regard to the imposition of $400 in attorney fees, defendant's claim that there was no statutory authority for the order of reimbursement is without merit. This Court has held that a trial court has authority to order a defendant to reimburse the county for costs paid for his representation. See *People v Nowicki*, 213 Mich App 383, 388; 539 NW2d 590 (1995). Further, MCL 769.1k(1)(b)(*iv*) (formerly MCL 769.1k(1)(b)(*iii*)) expressly permits the imposition of

---

[10] This section applies "[u]ntil 36 months after" October 17, 2014, and, thus, applies in this case. MCL 769.1k(1)(b)(*iii*).

-19-

"[t]he expenses of providing legal assistance to the defendant." Thus, the trial court had authority to order such reimbursement.

## C. INABILITY TO PAY

Defendant also claims that he is unable to pay court costs and attorney fees. This claim is premature. The trial court is not required to conduct an assessment of a defendant's ability to pay until the imposition of attorney fees is enforced and the defendant objects to the enforcement. *Jackson*, 483 Mich at 292-293. There is no evidence that enforcement of the court costs and attorney fees has been sought. When such enforcement begins, defendant can allege his inability to pay and the "evaluation will be whether . . . defendant is indigent and unable to pay *at that time* or whether forced payment would work a manifest hardship on the defendant *at that time*." *Id*. at 293 (emphases in original).

Although *Jackson* involved attorney fees only, this Court has stated that "[t]he plain language of MCL 769.1k does not require the trial court to consider a defendant's ability to pay before imposing discretionary costs and fees." *People v Wallace*, 284 Mich App 467, 470; 772 NW2d 820 (2009). The statute authorizing court costs, MCL 769.1k, similarly focuses on the time of enforcement by providing that "[a] defendant shall not be imprisoned, jailed, or incarcerated for the nonpayment of costs ordered under this section unless the court determines that the defendant has the resources to pay the ordered costs and has not made a good-faith effort to do so." MCL 769.1k(10). Thus, the trial court was not required to consider defendant's ability to pay at sentencing. At the time enforcement is sought, defendant may also request that the late penalty be waived pursuant to MCL 600.4803(1).

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that trial counsel was ineffective in failing to object to the imposition of the court costs and attorney fees at sentencing. Defendant's sentencing hearing was held on November 19, 2013, before *Cunningham* was decided on June 18, 2014. Accordingly, trial counsel was not ineffective for failing to raise issues related to *Cunningham*. Regardless, the Legislature enacted legislation in response to *Cunningham* and, as discussed above, the amended version of MCL 769.1k applies in this case. Even if the failure to object to the imposition of court costs without a factual basis constituted ineffective assistance of counsel, see *Sanders*, 296 Mich App at 715, defendant has obtained relief on this issue by our remand for determination of the factual basis for the costs imposed.

Affirmed in part and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra

-20-